IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CUSTOM FOAM WORKS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 09-cv-0710-MJR |
| HYDROTECH SYSTEMS, LTD., and AQUATIC DEVELOPMENT GROUP, | ) ) ) ) | |
| Defendants; | ) ) | |
| HYDROTECH SYSTEMS, LTD., | ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| CUSTOM FOAM WORKS, INC., and DANE TIPPETT, | ) ) ) | |
| Counterclaim Defendant. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

I. Introduction

In January 2005, Custom Foam Works, Inc., (CFW) entered into a contract with Hydrotech Systems, Ltd., and Aquatic Development (collectively, Defendants), under which CFW agreed to fabricate and deliver 32,232 square feet of architectural foam wall paneling to Hydrotech's indoor/outdoor water park construction project at the Massanutten Resort in Virginia.

On July 13, 2005, Defendants rejected a shipment of panels and terminated the contract. In September, 2009, CFW commenced this action, alleging common law fraud and breach of contract against Defendants. On June 11, 2010, the Court consolidated into this action the later-

1

filed action *Hydrotech Systems, Ltd. v. Tippett*, Case No. 10-cv-0239-MJR.

Defendants Hydrotech and Aquatic move for partial summary judgment on CFW's fraud claims, Counts I and III of the first amended complaint (Doc. 57). The motion is fully briefed, and the Court now rules as follows.

II.    Analysis

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. **Turner v. The Saloon, Ltd., 595 F.3d 679, 683 (7th Cir. 2010); Durable Mfg. Co. v. U.S. Department of Labor, 578 F.3d 497, 501 (7th Cir. 2009) (citing FED. R. CIV. P. 56(c)). Accord Alabama v. North Carolina, -- U.S. --, 130 S. Ct. 2295, 2308 (2010); Levy v. Minnesota Life Ins. Co., 517 F.3d 519 (7th Cir. 2008); Breneisen v. Motorola, Inc., 512 F.3d 972 (7th Cir. 2008)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).**

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. **National Athletic Sportswear, Inc. v. Westfield Ins. Co., 528 F.3d 508, 512 (7th Cir. 2008). Accord Reget v. City of La Crosse, 595 F.3d 691 (7th Cir. 2010); TAS Distributing Co., Inc. v. Cummins Engine Co., Inc., 491 F.3d 625, 630 (7th Cir. 2007).**

What the undersigned may *not* do in deciding a summary judgment motion is evaluate the weight of the evidence, judge the credibility of witnesses or determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. ***National Athletic*, 528 F.3d at 512 (citing *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443**

**(7th Cir. 1994)).**

A factual dispute is genuine "only if a reasonable jury could find for either party," and disputed facts must be outcome-determinative to be "material" and preclude summary judgment. ***Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).** *See also Van Antwerp v. City of Peoria, Illinois*, **627 F.3d 295, 297 (7th Cir. 2010).** But, as very recently reiterated by the Seventh Circuit Court of Appeals, in assessing the record before him, the undersigned Judge bears in mind that "the party opposing the motion gets the benefit of all facts that a reasonable jury might find." ***Loudermilk v. Best Pallet Co., LLC.*, -- F.3d --, 2011 WL 563765, *2 (7th Cir. Feb. 18, 2011).**

In the instant case, the first question the Court must decide is whether CFW's fraud claim is governed by New York law or Illinois law. The parties dispute whether New York law governs both the contractual and the fraud claims or whether Illinois law must be applied to the fraud claims.

A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits. ***Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)**. If the laws of more than one jurisdiction might apply, *Erie* principles require a federal court to apply the forum state's choice of law rules. ***Midwest Grain Prods. of Il.., Inc. v. Productization, Inc., 228 F.3d 784, 787 (7th Cir. 2000).*** Accordingly, this Court will apply Illinois choice of law rules to determine which state's substantive law applies to the claims at issue.

Generally, contractual choice of law provisions will be honored under Illinois law. ***Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 770 N.E.2d 177, 194 (Ill. 2002)***. To determine whether a choice of laws provision is intended to govern all disputes between the parties,

3

the Court engages in a two-part analysis. The Court first examines the contract's language. ***Kuehn v. Children's Hosp. of Los Angeles,* 119 F.3d 1296, 1302 (7th Cir. 1997) (a contractual choice of law provision "will not be construed to govern tort as well as contract disputes unless it is clear that is what the parties intended")**. Second, the Court must determine whether the claims at issue are dependent on the contract, because if the claims are dependent on the contract, they are governed by the contract's choice of law provision. ***Medeline Indus. Inc. v. Maersk Med. Ltd.,* 230 F.Supp.2d 857, 863 (N.D.Ill. 2002).** "Claims involving fraud in the formation of the contract are subject to that contract's choice of law provisions." ***Platinum Community Bank v. Marshall Investments Corp*., 2008 WL 4866343, \*4 (N.D.Ill. 2008) (citing *Doty v. Stoecker,* 697 F.Supp. 1016, 1020 (N.D.Ill.1988)).**

The Subcontract Agreement states, "The Subcontract Documents shall be governed and interpreted in accordance with the laws of the State of New York" (Subcontract Agreement § 1). The Court finds nothing in this clause that indicates the parties' clear intent to apply New York law to *all* disputes between them. ***See, e.g., Precision Screen Machines, Inc. v. Exelon, Inc.,* 1996 WL 495564, \*2 (N.D.Ill. 1996).** A plain language reading of the contract's choice of law provision evinces the parties' intent that New York law apply to interpretation and enforcement of the contract. Other matters, such as claims of fraud, are not governed by the contract's choice of law provision. So, the Court proceeds to the second prong of the analysis – whether the fraud claims are dependent on the contract.

To make this determination, the Court must ascertain whether "(1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the

4

contract." ***Facility Wizard Software, Inc., v. Southeastern Technical Services, LLC*, 647 F.Supp.2d 938, 943 (N.D.Ill. 2009) (citations omitted).**

The Court's review of CFW's First Amended Complaint leads the Court to the conclusion that the fraud claims are dependent on the contract. CFW alleges false statements of material facts (misrepresentation), fraud in the inducement, reliance and resulting damages as elements of its fraud claims. Each of these claims involves the formation, interpretation and/or construction of the contract. For example, CFW's fraud in the inducement claim states that Defendants made false statements "with the intent to induce [CFW] to act, when Defendant(s) subsequently failed to pay [CFW] for its performance under the contract."

All of CFW's statements are directly or closely related to Defendants' contractual promise to pay CFW for the fabrication and delivery of wall panels as called for in the contract. Accordingly, the Court finds that New York law governs CFW's fraud claims.[1]

"The elements of fraud under New York law are: (1) a misrepresentation or a material omission of material fact which was false and known by [the accused] to be false, (2) made for the purpose of inducing the [claimant] to rely on it, and (3) justifiably relied upon by the [claimant], (4) who then suffered an injury as a result of such reliance." ***Fuji Photo Film U.S.A., Inc. v. McNulty,* 669 F.Supp.2d 405, 413 (S.D.N.Y. 2009)**.

A separate cause of action seeking damages for intentional fraud 'cannot stand when

---

[1]This conclusion does not alter the outcome of the Court's fraud analysis because - as the parties concede - the elements necessary to support a fraud claim are substantively the same for New York and Illinois. ***See, e.g., Bixby's Food Systems, Inc. v. McKay* 193 F.Supp.2d 1053, 1065 (N.D.Ill. 2002) (quoting *Salkeld v. V.R. Bus. Brokers,* 548 N.E.2d 1151, 1157 (Ill. 1989)); *PPI Enters., Inc. v. Del Monte Foods Co.,* 2003 WL 22118977, at \*19 (S.D.N.Y. 2003)**.

the only fraud alleged relates to breach of a contract.'" *Shlang v. Bear's Estates Dev. of Smallwood, N.Y., Inc.,* **599 N.Y.S.2d 141, 143 (1993) (citations omitted)**. This is not, however, a "a wholesale prohibition against joining fraud and contract claims." *Id.* To sustain a claim for fraud and breach of contract, however, "the misrepresentations alleged in the pleadings must be more than merely promissory statements about what is to be done in the future; they must be misstatements of material fact or promises made with a present, albeit undisclosed, intent not to perform them." *Id.* **(citing** *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.,* **502 N.E.2d 1003 (N.Y. 1986))**.

According to Defendants, CFW has identified the following representations or actions in support of its fraud claim:

a. Stop payment of check number 076763.

b. Representation that progress on project was satisfactory and preliminary work regarding additional projects followed by termination.

c. Project was months behind prior to contract with plaintiff; followed by using plaintiff as an excuse for being behind.

d. Change in percentage of payment after approved contract.

e. Refusal to accept deliveries.

Defendants maintain that, as a matter of law, these statements cannot support a claim for common law fraud because (1) future promises to perform contractual obligations cannot support a claim for common law fraud; and (2) none of the evidentiary bases identified by CFW represents an existing material fact and the statements, at best, merely restate CFW's claim that Defendants breached the

payment terms of the contract.

The evidence submitted by CFW shows the following. CFW submitted a pay request for "panels on the site and more on the way" and e-mailed Defendants on May 25, 2005 asking for payment "per the agreement." Doc. 72, Exh. B. Defendants responded that they would have to "get with accounting" and would have the check sent out that day or the following day. *Id*. The check was not written until May 31, and Defendants later stopped payment on it. *Id*. Additionally, CFW submits a checking account statement reflecting that the account on which the check was written fluctuated between positive and negative balances during the week after the check was written.

On June 1, the day after the check was written, Defendants had a negative balance (-$734,055.80) in the account on which the check was drawn because a check for $1,000,000.00 was deducted from the account that day. Doc. 73, p. 10. The following day, June 2, nearly $2,000,000.00 was deposited in the account, which then maintained a positive balance until June 8 when the account shows a one-day negative balance of -$665,218.29. *Id*., p. 11. The June 8 negative balance coincides with the date on which Defendants promised to withdraw their stop-payment order: "It will be my pleasure to release the check today and can be easily done." Doc. 72, Exh. C.

According to Defendants' e-mail, the release of the check was contingent upon CFW's providing an overdue delivery schedule and CFW's President Dane Tippett's e-mailing that he agreed to visit the construction site to address concerns and to resolve issues related to the panels. *Id*. Tippett responded to Defendants' requests in letters dated June 10, 2005. Doc. 72, Exh. D. However, the check was not reissued. Moreover, Defendants added a stipulation as to how much and when CFW would be paid:

> Hydrotech will pay for $.50 on the dollar of the percentage of panels delivered as it relates to the total contract price. By way of example, if 5% of the total square footage of panels required under the contract is delivered to the jobsite, Hydrotech will pay 50% of 5% of the contract price until such time as the total value of all CFW's pay requests is within 5% of the amount previously paid. CFW will not make another pay request until 4 truckloads are on the jobsite. Doc. 72, Exh. E.

The Court's review of the bank account statements submitted shows that having a negative balance was not a normal operating procedure for Defendants, in that June 2 and 8 are the only dates on which Defendants carried a negative balance in the three months covered by the statements submitted. Doc. 73. In and of themselves, these fluctuations - oddly timed though they may be - might be insufficient to show an intent not to perform and, thus, to stave off summary judgment. But, when coupled with the failure to pay immediately, as promised, stopping payment on the check, again promising payment upon performance of certain acts by CFW and not paying after performance (or to date), CFW has shown that a genuine issue of material fact exists regarding whether Defendants' promise to pay was made with a present, undisclosed, intent not to perform it. The Court cannot say on the record before it that CFW was not injured by acting in reliance on Defendants' representation and continuing to perform under the contract.

In sum, the Court finds that giving the non-movant (CFW) the benefit of all facts and legitimate inferences that a reasonable fact-finder might find in its favor, summary judgment on the fraud counts is not warranted. Accordingly the Court **DENIES** Defendants' second motion for partial summary judgment (Doc. 57).

IT IS SO ORDERED.

DATED this 23rd day of March, 2011

<u>s/Michael J. Reagan</u>  
MICHAEL J. REAGAN  
United States District Judge